Sharon L. **NICHOLS**, David R. Nichols, Virginia Ann Callan, Charles Oliver Richardson, III, Marilyn Goodman, Thomas J. Goodman, Debra A. Lopez, Rudolph Lopez, Sharon Ruth Anderson, Rosemary Madrid Castaneda, Jesse Castaneda, Karen Leslie-Lloyd, Jacqueline Templin, Katherine Galati Novick, Karen Janet Davis, Peggy Lee Patterson, Michelle James, Patricia Ann Ehlert, Dana Messerly, Raymond Leroy Messerly, Susan Gail Parlon, Alicia Roberts, Lindsy Gail Syroid, Barbara Ruth Ames, Susan Partridge, David Partridge, Ruby Carolina Larabie, Deanna H. Robb, Carmen Callier, Anna Caruso, Cynthia Isabelle, Jean Claude Isabelle, Nancy Delsanto, James

Delsanto, Barbara Hayden, Norman Hayden, Deborah Ann Muscato, Stoina Hibbard, Michael Hibbard, Denise K. Liberman, Gayle E. Donnelly, Martha Caust–Moran, Pascal Moran, Roberta Walls, Charles Walls, Linda Phillips, Susan Lee Smirl Krupa, Karen Prewitt, Janet Rae Fergonese, Wanda S. McAlister, Tamara M. Felix, Felicitas L. Singer, Thomas J. Singer, Nichole Cohen Blair, Mary Ina Delisle Courville, George Vincent Courville, Prisuave Walker, Mark Dale Walker, Gail R. Zucker, Kenneth Jay Wolf, Roberta Fryer, Sharon P. Loftus, Michael J. Loftus, II, Janet Lynn Billings, Julia Mae Lambert Thaxton, Pauline Johnson, Catherine Evans, Cheryl Smith, Michael Smith, Nancy Daru Yaeli, Ron Thomas Yaeli, Barbara Helm–Gottsleben, Harriet Birnbaum Helberg, Sandy Morris Helberg, Nancy Frisch, Paul Frisch, Linda Jo McCarver, Byron Marvin McCarver, Sandra Carol Smith, Joseph James Smith, Debbie Dolores Stallings, John Francis Stallings, Jr., Carol A. Lofquist Cummins, Dirk P. Cummins, Lilyan Chrappa–Spool, Roger Owen Spool, Bonnie Eugenia Crownover, George Donald Crownover, Jr., Joyce Elaine Andrew–Lavage, William Michael Andrew–Lavage, Cynthia Corrine Hand, Michael Joseph Tracy, Monica Gay Ward, Cheryl Jane Gerhart, Ronald Scott Gerhart, Cindy Fohn Coleman, Kyle Howard Coleman, Janet Stein, Catherine Susan Larosa, Susan Lynn Pusep, Nancy Peeler Sheehan, Charles M. Sheehan, Irene Sylvia Angelico, Abbey Jack Neidik, Elsie Espana, Elio Espana, Gayle Peterson, Plaintiffs–Appellants,

v.

G.D. SEARLE & COMPANY; Searle Laboratories, A Division of Searle Pharmaceuticals, Incorporated, Defendants–Appellees.

Patricia AMOS, Kimberly Barnes, Robin Barrow, Graham John Barrow, Teresa Ann Belcher, Jack William Belcher, Betty Mae Bennett, Betsy Breneman, Brenda K. Briggle, Deborah Burnett, Joseph Burnett, Ann Cheslaw, Rebecca Craig, James Craig, Darla Decker, Barbara Durand, Yolande Etosh, Patricia Fowler, Carolina Lee Fridrich, Naomi Goldstein, Charlene Graham–Gold, Martin Ian Gold, Christine Haw, Janet Hillen, Trudy Holtz, Johann Holtz, Janet Chappell Jacobs, Glendon C. Jacobs, Tammy Johnson, Charlene Krueger, Debbie Kaye Lemons, Stanley Eugene Lemons, Eva Morris, Edward Michael Morris, Michelle O'Brien, Michael O'Brien, Rebecca Israel Omoto, Shelly Penkala, Pamela Peterson Perkins, Leonard Perkins, Jr., Priscilla King Randall, Russell Floyd Randall, Debra Reynolds, Timothy Lee Reynolds, Rhoda Richardson, Brenda Riser, Kathy Rogers, Antoinette Mikrut, Gail Sanders, Jeanette Romano Snell, Patricia Sontag, Edward William Neuhueller, Judith Spalla, Frederick Thomas Spalla, Kathy Ann Taylor, Jennifer Tinnen, Robert D. Tinnen, Dore Wagner, Lynette Gail White, Kim Raymond White, Plaintiffs–Appellants,

and

Karen B. Burke, Richard Walter Welgar, Helen Dingler, Doris Jefferson, Georgine Lane, Debra Lester, Sheryl Martin, Johnny Rae Martin, Doris Mason, William Mason, Theresa McHaffie, Haine Edward McHaffie, II, Patricia Pelczarski; Joseph Pelczarski, Nancy Perkins, James Perkins, Evelyn Rich, Alan Samuel Rich, Ann Marie Waddell, Pamm Wedekemper; Sanda Hawkins, Individually and as Guardian for Tamika Wilkinson and as Representative for the Estate of Pamela Wilkinson, Plaintiffs,

v.

G.D. SEARLE & COMPANY, Searle Pharmaceuticals, Incorporated, Defendants–Appellees.

Nos. 92–1491, 92–1492.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 1, 1993.

Decided April 23, 1993.

Howard Robert Erwin, Jr., Pretl & Erwin, Baltimore, MD, argued (Pamela Gwyneth Wiggin, on brief), for appellants.

Paul Farrell Strain, Venable, Baetjer & Howard, Baltimore, MD, argued (James L. Shea, Elizabeth C. Honeywell, on brief), for appellees.

Before RUSSELL, NIEMEYER, and WILLIAMS, Circuit Judges.

## OPINION

DONALD RUSSELL, Circuit Judge:

Plaintiffs in this consolidated appeal are 116 women who filed products liability actions against defendant G.D. Searle & Company ("Searle") in the District of Maryland from 1987–1991 alleging that they were injured by the Cu–7 intrauterine device manufactured by Searle. The district court granted Searle's motion to dismiss these actions for lack of personal jurisdiction 783 F.Supp. 233, and denied plaintiffs' motion to amend its dismissal in order to transfer their cases to the Northern District of Illinois. Plaintiffs appeal both of these orders. Because we find no error in either order, we affirm.

### I

None of the plaintiffs reside in Maryland, and none of their causes of action arose there. Searle has never maintained an office in Maryland and has never manufactured there. Searle's only activity in the state in the years prior to these suits was that between 1981 and 1987 it employed 17–21 people, 13 of whom were Maryland residents, as "detail" representatives and consumer product representatives.

The detail representatives, under the direction of a district manager who was also in Maryland, promoted the use of Searle's pharmaceutical products by physicians, hospitals, and wholesalers. Orders for the products they promoted were not placed through them but were made directly through the company. To coordinate the detail representatives, the district manager held meetings in Maryland thrice annually.

The consumer product representatives, who were also under the direction of a district manager in Maryland, promoted

Searle's pharmaceutical products to retail drug stores. This promotion included providing counter-top advertising displays to these stores, and advertising in local papers. In addition to promotion, consumer product representatives took product orders from the drug stores.

In connection with their employment, Searle gave both detail representatives and consumer product representatives a supply of samples and promotional materials and the use of company cars registered in Maryland. As a result of these representatives' efforts, Searle had $9,000,000–$13,000,000 annual sales in Maryland between 1983 and 1987, which constituted approximately two percent of its total sales.

In addition, on two occasions in the years preceding the suits, Searle held regional and national meetings in Maryland for its district managers. Also, it contracted in the years preceding the suits with a Maryland firm for some of its drug research. Finally, it made certain purchases [1] in Maryland in the years preceding the suit, but these constituted less than one percent of its annual purchases.

The Maryland district court granted Searle's motion to dismiss all of these cases for lack of personal jurisdiction. Plaintiffs then moved under Fed.R.Civ.P. 59(e) to amend the district court's judgment in order to transfer their cases, under 28 U.S.C. § 1406(a), to the Northern District of Illinois, where Searle has its principal place of business, instead of dismissing the cases. The district court denied this motion, finding that, because plaintiffs' attorneys could have foreseen that the district court lacked personal jurisdiction over plaintiffs' actions when they filed them, it was not now in the interest of justice to transfer them.

### II

■ Plaintiffs contend that the district court erred in dismissing their cases for lack of personal jurisdiction. We review the district court's ruling *de novo* and reject this contention.

---

1. The record does not disclose what Searle pur-    chased.

A federal court sitting in diversity has personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process. *Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371, 373 (4th Cir.1985). Maryland's long-arm statute permits jurisdiction to the limits permitted by due process. *Geelhoed v. Jensen*, 277 Md. 220, 352 A.2d 818, 821 (Md.1976). Thus, as the parties here agree, the Maryland district court had personal jurisdiction over Searle if such jurisdiction would not have violated due process.

▮ Due process requires that in order to subject a defendant to personal jurisdiction, the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quotation omitted). When, as in the case at bar, a suit does not arise out of the defendant's activities in the forum state, the court must exercise "general jurisdiction" and the requisite "minimum contacts" between the defendant and the forum state are "fairly extensive." *Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745, 748 (4th Cir.) (quotation omitted), *cert. denied*, 404 U.S. 948, 92 S.Ct. 271, 30 L.Ed.2d 265 (1971).[2] "Conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to [general jurisdiction]." *International Shoe*, 326 U.S. at 317, 66 S.Ct. at 159. Even "continuous activity of some sorts [by a corporation] within a state is not enough to support [general jurisdiction over the corporation]." *Id.* at 318, 66 S.Ct. at 159. Only when the "continuous corporate operation within a state [is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities" may a court assert general jurisdiction over a corporate defendant. *Id.*

In *Ratliff*, we addressed whether advertising and solicitation activities alone constitute the type of "continuous corporate operation" within a forum state that justifies general jurisdiction over a defendant in a suit brought by a plaintiff who is not a resident of the forum state. *Ratliff* involved an action brought by a non-resident plaintiff against a drug company whose only activities in the forum state were to employ five detail representatives who promoted their products. We held that these activities did not constitute the requisite "minimum contacts" between the drug company and the forum state, and stated that "[w]hen ... defendant's only activities consist of advertising and employing salesmen to solicit orders, we think that fairness will not permit a state to assume [general] jurisdiction." *Id.* at 748 (quoting *Seymour v. Parke, Davis & Co.*, 423 F.2d 584, 587 (1st Cir.1970)).[3]

This holding accords with older Supreme Court precedent, *see People's Tobacco Co. v. American Tobacco Co.*, 246 U.S. 79, 87, 38 S.Ct. 233, 235, 62 L.Ed. 587 (1918) (holding that advertising and solicitation alone do not justify general jurisdiction); *Green*

2. When a court exercises jurisdiction over a suit that does not arise out of the defendant's activities in the forum state, this jurisdiction is called "general jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404 (1984). Jurisdiction over a suit that arises out of the defendant's activities in the forum state is called "specific jurisdiction." *Id.* at 414 n. 8, 104 S.Ct. at 1872 n. 8.

3. This Court did hold in *Lee v. Walworth Valve Co.*, 482 F.2d 297 (4th Cir.1973), that promotional and solicitation activities by a non-resident corporate defendant in South Carolina were sufficient by themselves to justify general jurisdiction in South Carolina over a suit brought by a South Carolina resident. *Lee* relied heavily, and distinguished *Ratliff*, on the grounds that, first, South Carolina had an interest in the case because it involved a South Carolina plaintiff, *id.* at 299–300, and, second, South Carolina was as appropriate a forum as any other state because the cause of action arose in Cuba, *id.* at 299. *Lee* is not applicable in considering the case at bar because neither ground exists in this case, which is similar to *Ratliff.* First, none of the plaintiffs here are Maryland residents and, second, Maryland is a less appropriate forum than Illinois, where Searle has its principal place of business, or than any other of the states where plaintiffs' causes of action arose.

*v. Chicago, B & Q. R. Co.,* 205 U.S. 530, 27 S.Ct. 595, 596, 51 L.Ed. 916 (1907) (finding no general jurisdiction when a corporate defendant's activities in the forum state were "in substance nothing more than that of solicitation"), as well as the holdings of other courts of appeals that have addressed the issue, *Glater v. Eli Lilly & Co.,* 744 F.2d 213, 217 (1st Cir.1984) (holding that advertising in professional journals and employing sales representatives did not justify general jurisdiction); *Congoleum Corp. v. DLW Aktiengesellschaft,* 729 F.2d 1240, 1242 (9th Cir.1984) ("[N]o court has ever held that the maintenance of even a substantial sales force within the state is a sufficient contact to assert [general] jurisdiction.").

*Ratliff*'s holding is also consistent with the policy considerations underlying general jurisdiction. As two leading jurisdictional commentators have noted, because specific jurisdiction has expanded tremendously, *see, e.g., Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), plaintiffs now may generally bring their claims in the forum in which they arose. Arthur T. von Mehren and Donald T. Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 1121, 1148–53 (1966). As a result, "obsolescing notions of general jurisdiction," *id.* at 1144, which functioned primarily to ensure that a forum was available for plaintiffs to bring their claims, have been rendered largely unnecessary. *Id.* at 1178–79. Thus, broad constructions of general jurisdiction should be generally disfavored.

■ We find the case at bar controlled by *Ratliff*'s rule that advertising and solicitation activities alone do not constitute the "minimum contacts" required for general jurisdiction. Outside of the 17–21 promotional representatives and two district managers that supervise them, Searle's only contacts with Maryland are that it keeps automobiles, samples and promotional materials there, that it had a one-time contract with a Maryland firm for some of

its drug research and held two regional and national meetings for district managers there, and that it made less than one percent of its total purchases there. Keeping promotional materials, samples, and automobiles in Maryland is naturally derivative of Searle's solicitation activity in employing its representatives there. Searle's one-time contract with a Maryland firm for some of its drug research and its two regional and national meetings for district managers in Maryland are not the type of "continuous corporate operation" that affects the determination of whether general jurisdiction exists. Finally, Searle's purchases in Maryland are too insignificant to be considered. *See Rosenberg Bros. Co. v. Curtis Brown Co.,* 260 U.S. 516, 518, 43 S.Ct. 170, 171, 67 L.Ed. 372 (1923) (reaffirmed by *Helicopteros,* 466 U.S. at 418, 104 S.Ct. at 1874) (holding that even a large percentage of a corporation's purchases in the forum state is not sufficient to justify general jurisdiction).

Accordingly, we find that the district court did not err in holding that it lacked personal jurisdiction over Searle.

### III

■ Plaintiffs also contend that the district court erred in denying their motion to amend its dismissal judgment in order to transfer their cases to the Northern District of Illinois. The district court denied the motion on the ground that the court's lack of jurisdiction over plaintiffs' actions was foreseeable to plaintiffs' attorneys when they filed them. Plaintiffs do not suggest that their attorneys' errors in filing their actions in Maryland were not reasonably foreseeable; they argue only that the district court abused its discretion in refusing on that basis to transfer their actions. We review the district court's denial for abuse of discretion, *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 2243, 101 L.Ed.2d 22 (1988), and reject this argument as well.

Plaintiffs sought to have their actions

transferred under 28 U.S.C. § 1406(a)[4], which states:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

This Court heretofore has rendered no published opinion addressing whether a district court abuses its discretion by denying, as not in the interest of justice, a plaintiff's motion under section 1406(a) or section 1404(a)[5] to transfer a case from an improper forum on the ground that the plaintiff's attorney could reasonably have foreseen that the forum in which he/she filed was improper. Five other courts of appeals have addressed this issue, however, and have unanimously concluded that such a denial is not an abuse of discretion. *Spar, Inc. v. Information Resources, Inc.,* 956 F.2d 392, 394 (2d Cir.1992); *Deleski v. Raymark Industries, Inc.,* 819 F.2d 377, 381 (3d Cir.1987); *Cote v. Wadel,* 796 F.2d 981, 985 (7th Cir.1986); *Wood v. Santa Barbara Chamber of Commerce, Inc.,* 705 F.2d 1515, 1523 (9th Cir.1983), *cert. denied,* 465 U.S. 1081, 104 S.Ct. 1446, 79 L.Ed.2d 765 (1984); *Dubin v. United States,* 380 F.2d 813, 816 n. 5 (5th Cir.1967); *see also Hapaniewski v. City of Chicago Heights,* 883 F.2d 576, 579–80 (7th Cir.1989), *cert.* denied, 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1023 (1990); *Saylor v. Dyniewski,* 836 F.2d 341, 345 (7th Cir.1988). These decisions are premised on the notion that a district court acts within its discretion when it finds that the interest of justice is not served by allowing a plaintiff whose attorney committed an obvious error in filing the plaintiff's action in the wrong court, and thereby imposed substantial unnecessary costs on both the defendant and the judicial system, simply to transfer his/her action to the proper court, with no cost to him/herself or his/her attorney. Their reasoning is best expressed by Judge Posner in *Cote:*

> [T]he proper penalty for obvious mistakes that impose costs on opposing parties and on the judicial system is a heavy one.... If the result in the present case seems harsh, that is because the costs to [the plaintiff] are palpable where the benefits are largely invisible. But the benefits are not trivial; litigants and the public will benefit substantially in the long run from better compliance with the rules limiting personal jurisdiction.

*Cote,* 796 F.2d at 985.

We find these decisions persuasive. Moreover, we find their reasoning supported by the Supreme Court's decision in *Goldlawr.* In holding that a transfer was proper where the plaintiff's attorney, as a result of an obscure rule about where the defendant corporation could be "found," filed plaintiff's action in a court that lacked proper venue or personal jurisdiction, the Court stated:

> The problem which gave rise to the enactment of [section 1406] was that of avoiding the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some *elusive* fact of the kind upon which venue provisions often turn.

*Goldlawr,* 369 U.S. at 466, 82 S.Ct. at 915 (emphasis added). The negative implication of the Court's statement is that where a plaintiff's attorney files in the wrong jurisdiction not "because they ... made an erroneous guess with regard to an elusive fact," but because he/she made an obvious error, transfer under section 1406 is inap-

---

**4.** Section 1406(a) was the proper provision under which transfer should have been sought because, in addition to being without personal jurisdiction, the District of Maryland is without proper venue. *See Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 465, 82 S.Ct. 913, 915, 8 L.Ed.2d 39 (1962); 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 3827, at 263–66 (1986).

**5.** 28 U.S.C. § 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The analysis of whether a transfer is "in the interest of justice" is the same under section 1404(a) as it is under section 1406(a). Wright, Miller & Cooper, § 3827, at 264–66.

propriate. For these reasons, we hold that a district court does not abuse its discretion when it denies, as not in the interest of justice, a plaintiff's motion under section 1406(a) or section 1404(a) to transfer a case from an improper forum because the plaintiff's attorney could reasonably have foreseen that the forum in which he/she filed was improper.[6]

■ There is no question that plaintiffs' attorneys here could have reasonably foreseen when they brought their claims that the Maryland district court lacked personal jurisdiction over their actions; indeed, *Ratliff* made it very obvious. Nonetheless, they filed their actions in Maryland and imposed substantial costs over a period of five years on Searle, which was forced to defend in a foreign and improper forum, and on the Maryland district court, which had no interest in their actions. The district court, therefore, did not abuse its discretion by denying plaintiffs' motion to transfer.

■ The objection may be raised that plaintiffs here are being penalized for the errors of their attorneys. While this is undoubtedly and unfortunately true, it is, as the Supreme Court has held, a natural byproduct of our "system of representative litigation." *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (U.S.1993) (quotation omitted). Under our system, except in exceedingly rare instances, for example when a criminal defendant's attorney has been constitutionally ineffective, litigants "cannot ... avoid the consequences of the acts and omissions of [their attorneys]." *Id.* (quotation omitted). We see no indication that Congress intended district courts, in addressing whether to transfer an action under section 1404(a) or section 1406(a), to disregard our well-recognized systemic norm that litigants are bound by the actions of their attorneys.

6. We do not imply that a district court would necessarily err by granting a plaintiff's motion to transfer an action that the plaintiff's attorney filed in the wrong court because of an obvious error. Our holding is only that when the plaintiff's attorney has committed an obvious error and the district court does not find that transfer would serve the interest of justice, we will not disturb its exercise of discretion.

## IV

For the reasons set forth, we affirm both the district court's dismissal of plaintiffs' actions for lack of personal jurisdiction and its denial of plaintiffs' motion to amend its judgment in order to transfer their actions to the Northern District of Illinois.

AFFIRMED.