**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JERRY L. LANDERS; KAREN L.
LANDERS, his wife,
Plaintiffs-Appellants,

v.

DAWSON CONSTRUCTION PLANT,
LIMITED,                                                              No. 98-2709
Defendant-Appellee,

and

L. B. FOSTER COMPANY, a Delaware
corporation,
Defendant.

JERRY L. LANDERS; KAREN L.
LANDERS, his wife,
Plaintiffs,

and

L. B. FOSTER COMPANY, a Delaware
corporation,                                                          No. 98-2763
Defendant-Appellant,

v.

DAWSON CONSTRUCTION PLANT,
LIMITED,
Defendant-Appellee.

Appeals from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CA-97-797-2)

Argued: September 24, 1999

Decided: November 2, 1999

Before LUTTIG, MICHAEL, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Leslie Renee Stotler, RANSON LAW OFFICES,
Charleston, West Virginia; Phillip Carrington Monroe, CAMPBELL,
WOODS, BAGLEY, EMERSON, MCNEER & HERNDON,
P.L.L.C., Charleston, West Virginia, for Appellants. Louis Smith,
LEBOEUF, LAMB, GREENE, & MACRAE, L.L.P., Newark, New
Jersey, for Appellee. **ON BRIEF:** J. Michael Ranson, Cynthia M.
Salmons, RANSON LAW OFFICES, Charleston, West Virginia;
David A. Mohler, CAMPBELL, WOODS, BAGLEY, EMERSON,
MCNEER & HERNDON, P.L.L.C., Charleston, West Virginia, for
Appellants. Theodore D. Aden, LEBOEUF, LAMB, GREENE &
MACRAE, L.L.P., Newark, New Jersey, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jerry L. Landers and his wife Karen L. Landers (collectively the
"Plaintiffs") sued L.B. Foster Company ("Foster") and Dawson Con-
struction Plant, Ltd. ("Dawson") for injuries suffered by Mr. Landers
while working on the Admiral T. J. Lopez Bridge over the Kanawha

2

River at Chelyan, West Virginia. After their claim against Dawson was dismissed for lack of personal jurisdiction, the Plaintiffs sought reinstatement of Dawson as a defendant and transfer of the litigation to the Western District of Pennsylvania. Foster filed a separate motion seeking the same relief. On October 15, 1998, both motions were denied.

The Plaintiffs and Foster appeal from the district court's October 15, 1998 Memorandum Opinion and Order. Finding no reversible error, we affirm.

I.

On April 22, 1996, Mr. Landers, a West Virginia resident and an employee of C.J. Mahan Construction Company, was working on the construction of the Admiral Lopez Bridge when a piece of sheet piling released from a shackle and injured him. The Plaintiffs originally filed suit against Foster on November 20, 1996, in the Circuit Court of Kanawha County, West Virginia, alleging that the accident had occurred as the result of a defective shackle distributed by Foster. Later, on June 12, 1997, they filed an Amended Complaint adding Dawson, the manufacturer of the shackle, as a defendant. In response to the Amended Complaint, Dawson removed the action to the district court for the Southern District of West Virginia, and subsequently filed a motion to dismiss for lack of personal jurisdiction.

On December 15, 1997, the district court concluded that Dawson "had no purposeful contact with West Virginia," and granted Dawson's motion to dismiss. Accordingly, the district court dismissed both the Plaintiffs' claims and Foster's cross-claims against Dawson.

Attorneys for the Plaintiffs and Foster thereafter travelled to England to depose Robin Dawson, the Managing Director of Dawson, seeking to discover the extent of Dawson's contacts with West Virginia. During the deposition, it was ascertained that Mr. Dawson had met with Michael James Songer, the General Manager of Foster's Equipment Division, in Pittsburgh, Pennsylvania, to discuss distribution of Dawson's products in the United States. Likewise, in an affidavit executed on February 24, 1998, Mr. Songer indicated that he and Mr. Dawson had specifically discussed locating a distributor for

3

the Mid-Atlantic states, including West Virginia. Based on these additional facts, Foster filed a motion for reconsideration of the district court's dismissal of Dawson. However, by order of April 27, 1998, the district court denied the motion for reconsideration. Of note, the two-year Pennsylvania statute of limitations had expired five days earlier, on April 22, 1998.

On September 1, 1998, the Plaintiffs filed a motion seeking reinstatement of Dawson as a defendant and transfer of the litigation to the Western District of Pennsylvania, pursuant to either 28 U.S.C. § 1404(a) or § 1406(a).**1** Foster filed a similar application on September 4, 1998. After considering the relevant factors, the district court, by its October 15, 1998 Memorandum Opinion and Order, denied both motions. The Plaintiffs and Foster have appealed from this Order, asserting that the district court abused its discretion, and that its decision should be reversed.

II.

Under the provisions of either § 1404(a) or§ 1406(a), the district court has broad discretion to grant or deny a motion to transfer to another district. Cote v. Wadel, 796 F.2d 981, 985 (7th Cir. 1986); accord, Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1201 (4th Cir. 1993). Therefore, a district court's ruling on a motion to transfer will be reversed only for a clear abuse of discretion. Id.

When faced with motions to transfer, district courts must engage in an analysis of convenience and fairness, weighing a number of case-specific factors. Stewart Organization, Inc. v. Ricoh Corp., 487

---

**1** Section § 1404(a) provides as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section § 1406(a) states: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." We note that the analysis of whether a transfer is in the "interest of justice" is the same under both § 1404(a) and § 1406(a). Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1201 n.5 (4th Cir. 1993).

4

U.S. 22, 29 (1988). In particular, the following factors are commonly considered in ruling on a motion to transfer:

> (1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice.

Alpha Welding & Fabricating, Inc. v. Heller, 837 F. Supp. 172, 175 (S.D. W. Va. 1993) (citing Verosol B.V. v. Hunter Douglas, Inc., 806 F. Supp. 582, 592 (E.D. Va. 1992); Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947)). After identifying and balancing these specific factors in this case, the district court concluded that transfer to the Western District of Pennsylvania was not warranted.[2]

The Plaintiffs and Foster contend that the district court abused its discretion in denying the motions to transfer the litigation to the Western District of Pennsylvania, arguing that it was not reasonably foreseeable that personal jurisdiction could not be asserted over Dawson in West Virginia. As a result of the timing of the district court's ruling on the jurisdictional issue, the Plaintiffs' claims against Dawson are now barred by the statute of limitations in Pennsylvania.

_____

[2] In reaching this conclusion, the district court pointed out that (1) Mr. Landers's injuries occurred in West Virginia; (2) the Plaintiffs and most witnesses are located in West Virginia; (3) transfer would come at no cost to the Plaintiffs, but at substantial cost to Dawson and the judicial system; and (4) since West Virginia law would apply in this diversity action, a West Virginia federal court would be more familiar with West Virginia law than a federal court in Pennsylvania. While the Plaintiffs and Foster concede that West Virginia "is the most convenient and appropriate jurisdiction for this litigation," they argue that the district court "eliminated" West Virginia as a forum by dismissing Dawson for lack of personal jurisdiction. This argument is without merit. Under West Virginia law, the Plaintiffs could have obtained a full recovery against Foster in West Virginia for the damages they proved were caused by the defective shackle. See, e.g., Morningstar v. Black & Decker Mfg. Co., 253 S.E.2d 666, 683 n.22 (1979).

5

We have held that there is no abuse of discretion when a district court denies a plaintiff's motion to transfer "on the ground that the plaintiff's attorney <u>could reasonably have foreseen</u> that the forum in which he/she filed was improper." <u>Nichols</u>, 991 F.2d at 1201 (emphasis added) (citations omitted). Furthermore, as the authorities relied on in <u>Nichols</u> indicate, this principle applies even where the district court dismisses the action based on the absence of personal jurisdiction, and a subsequent action would be barred based on the statute of limitations.**3**

The Plaintiffs and Foster attempt to distinguish <u>Nichols</u> by arguing that "it was not reasonably foreseeable that the district court would rule that Dawson did not have minimum contacts with West Virginia in order to sustain personal jurisdiction." Appellants Br. at 21. Relying on the Supreme Court's decision in <u>Goldlawr, Inc. v. Heiman</u>, 369 U.S. 463 (1962), the Plaintiffs and Foster assert that the facts presented in this case are precisely the type that gave rise to the enactment of § 1404(a) and § 1406(a) in the first place. In <u>Goldlawr</u>, the Court stated that the underlying purpose of these statutes is to avoid the injustice resulting to Plaintiffs from a dismissal of their case "merely because they made an erroneous guess with regard to the existence of some <u>elusive fact</u> of the kind upon which venue provisions often turn." <u>Id.</u> at 466 (emphasis added). Asserting that the lack of personal jurisdiction as to Dawson in West Virginia was such an "elusive fact," the Plaintiffs and Foster argue that "unless counsel had a crystal ball, they could not have foreseen, in advance, that this civil action should have been filed in the Western District of Pennsylvania." Appellants Reply Br. at 7.

In this civil action, however, the appellants had something more reliable than a crystal ball: the unequivocal order of the district court of December 15, 1997, finding a lack of personal jurisdiction as to Dawson. Here, not only should the Plaintiffs and Foster have "reason-

_____

**3 <u>See</u>**, <u>e.g.</u>, <u>Spar,Inc. v. Information Resources, Inc.</u>, 956 F.2d 392, 394 (2d Cir. 1992); <u>Deleski v. Raymark Indus., Inc.</u>, 819 F.2d 377, 381 (3d Cir. 1987); <u>Cote v. Wadel</u>, 796 F.2d 981, 985 (7th Cir. 1986); <u>Wood v. Santa Barbara Chamber of Commerce, Inc.</u>, 705 F.2d 1515, 1523 (9th Cir. 1983); <u>Dubin v. United States</u>, 380 F.2d 813, 816 n.5 (5th Cir. 1967).

ably foreseen" that jurisdiction over Dawson was lacking, there was a direct judicial determination on that issue. Thus, the Plaintiffs' and Foster's reliance on Goldlawr is misplaced, because any error against the Plaintiffs in this case did not involve some unforeseeable, elusive fact. Rather, all relevant facts, including the lack of personal jurisdiction over Dawson in West Virginia, were readily apparent to both appellants at least four months prior to the running of the Pennsylvania statute of limitations. Under these circumstances, the district court's adverse rulings do not constitute an abuse of its discretion.

III.

Because the district court did not abuse its discretion in denying the Plaintiffs' and Foster's motions to reinstate Dawson and transfer the litigation to the Western District of Pennsylvania, we are compelled to affirm.

AFFIRMED

7