SPORTRUST ASSOCIATES INTERNA-
TIONAL, INC., Ronald M. Del Duca,
Jr., and Petr Svoboda, Plaintiffs,

v.

The SPORTS CORPORATION, Richard
Winter, and Jaromir Henys,
Defendants.

No. 2:03 CV 666.

United States District Court,
E.D. Virginia,
Norfolk Division.

Jan. 27, 2004.

Alan Dale Albert, Esquire, Troutman Sanders, LLP, Norfolk, VA, for Plaintiffs.

Dana D. McDaniel, Esquire, Patrick R. Hanes, Esquire, Dennis Kyle Deak, Esquire, Williams Mullen, PC, Richmond, VA, for Defendants The Sports Corporation and Richard Winter.

## OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This case involves three plaintiffs and three defendants: plaintiffs Sportrust Associates International ("Sportrust"), a Virginia corporation; Ronald M. Del Duca, Jr., a citizen of Virginia; Petr Svoboda, a citizen of Florida; and defendants The Sports Corporation, an Alberta, Canada corporation; Richard "Ritchie" Winter ("Winter"), a citizen of Canada; and Jaromir Henys ("Henys"), a citizen of the Czech Republic. All plaintiffs and all defendants are in the business of representing National Hockey League ("NHL")

players and aspiring NHL players. Plaintiffs claim that defendants have engaged in unfair competition regarding client representations. The specific claims are for (1) defamation, (2) conspiracy to harm business, (3) tortious interference with contractual relations, (4) tortious interference with business expectancies, and (5) tortious interference with prospective economic advantage.[1]

Defendants The Sports Corporation and Winter have moved to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). In response, plaintiffs concede that the claims raised in their complaint did not "arise out of" the defendants' Virginia business activities and that the court is therefore unable to exercise specific jurisdiction over the defendants. (Pls.' Mem. in Opp. at 8.) Plaintiffs instead rely on a theory of general jurisdiction. Plaintiffs claim that defendants' representation of players on the Norfolk Admirals hockey team constitutes activities which are continuous, systematic, and so substantial as to justify suit against defendants in Virginia on any cause of action, even one unrelated to the representation of Norfolk Admirals players. Plaintiffs argue that their claim for general jurisdiction is strengthened by two factors: (1) Virginia's interest in providing a forum for its citizen plaintiffs, and (2) the lack of any alternative American forum. Plaintiffs also argue that, if the court cannot find personal jurisdiction at this time, limited jurisdictional discovery is a more appropriate remedy than dismissal.

## I. Facts

All three defendants have submitted affidavits specifically disavowing the most common and substantial jurisdictional contacts, such as conducting business in Virginia, maintaining a Virginia office, engaging in sales or service activities in Virginia, soliciting business in Virginia, or deriving revenue from Virginia. The individual defendants, Winter and Henys, state by affidavit that they have no contacts with Virginia, other than possibly stopping to change planes at airports incidental to travel to other destinations. An affidavit executed by the Chief Operational Officer of the corporate defendant, The Sports Corporation, states that the corporation's only connection with Virginia comes from representing two players on the Norfolk Admirals minor-league hockey team for the past two years.[2] (Kotlowitz Aff. ¶¶ 1, 16.) Neither of the two Norfolk players represented by The Sports Corporation appears to be involved in the substantive claims in this case. In connection with these two representations, The Sports Corporation concedes that it may have made a few phone calls to Virginia, and on one occasion flew an agent to Virginia for a lunch meeting with a player. The Sports Corporation denies any other contacts with Virginia through its representation of the two Norfolk Admirals players, and denies deriving any revenue through the representations.

Plaintiffs state by affidavit that it is common for a hockey agent to waive commissions for a player on a minor league team, such as the Norfolk Admirals, in order to create goodwill so that the player will continue the representation if and when he "graduates" to the NHL. (Del Duca Aff. ¶ 4.) Plaintiffs argue that defendants have revenue from their Virginia representations if any Sports Corporation

---

1. It appears that there is already a civil action pending between these parties in Alberta, Canada. In June 2003, three months prior to the filing of this case, The Sports Corporation, the instant defendant, brought unfair competition claims against Sportrust, the instant plaintiff.

2. The Sports Corporation represents ninety hockey players overall.

players from a Virginia team have gone on to play for the NHL in another state.[3] This argument, however, does not do much to strengthen the case for jurisdiction, because the supplemental affidavit of The Sports Corporation's Chief Operational Officer states that the two Norfolk players "are the only players represented in the last five (5) years who have been assigned to play for a Virginia-based team." (Kotlowitz Supp. Aff. ¶ 7.) Moreover, plaintiffs cite no cases to support this theory of revenue-shifting. The logical connection between income received from players who played in Virginia at some point in their careers and Virginia revenue is too attenuated to support personal jurisdiction.

## II.  Legal Standards

When a court's personal jurisdiction is challenged by a Rule 12(b)(2) motion, the jurisdictional question is for the judge to decide. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). The court views all allegations in the light most favorable to the plaintiff, and the burden on the plaintiff is to make a prima facie showing of jurisdiction. *Id.*

For a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. *Christian Sci. Bd. of Dirs. v. Nolan*, 259 F.3d 209, 215 (4th Cir.2001). Because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, "the statutory inquiry necessarily merges with the constitutional

inquiry, and the two inquiries essentially become one." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir.2002).

A court is exercising "general jurisdiction" when it exercises personal jurisdiction over a defendant in a suit not arising out of the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). For general jurisdiction over a corporation to comport with due process, there must be "continuous corporate operation within a state [that is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir.1993) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).[4] The threshold level of minimum contacts to confer general jurisdiction is "significantly higher" than for specific jurisdiction, *ESAB Group v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir.1997), and "broad constructions of general jurisdiction should be generally disfavored," *Nichols*, 991 F.2d at 1200. Courts typically exercise general jurisdiction "only over nonresidents who are essentially domiciled within the forum state." *Corry v. CFM Majestic, Inc.*, 16 F.Supp.2d 660, 663 (E.D.Va.1998) (Ellis, J.). Although it declined to decide the issue, the Supreme Court has questioned whether this type of general jurisdiction can ever apply to individuals, rather than corporations. *Burnham v. Superior Court*, 495 U.S. 604, 610 n. 1, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) ("It may be that whatever special rule exists permit-

---

3.  There is no NHL team in Virginia.

4.  Although this standard is often referred to as requiring "continuous and systematic" contacts, the contacts must not merely be

continuous and systematic, but also substantial. *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir.1993) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

ting 'continuous and systematic' contacts ... to support jurisdiction with respect to matters unrelated to activity in the forum applies only to corporations." (citation omitted)).

### III. Analysis

#### A. General Jurisdiction

■■■ The court must determine whether plaintiffs have proven by a preponderance of the evidence that defendants' contacts with Virginia are continuous, systematic, and so substantial as to justify suit against defendants in Virginia on any cause of action, regardless of its connection to their Virginia activities. The contacts in evidence here—defendants' representation of two players on the Norfolk Admirals hockey team—are well short of the contacts required to confer general jurisdiction.

Any number of cases could be cited to demonstrate the high standard required to establish general jurisdiction. The Supreme Court's decision in *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), and the Fourth Circuit's decision in *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195 (4th Cir.1993), are both instructive. The Fourth Circuit's decision in *Lee v. Walworth Valve,* 482 F.2d 297 (4th Cir. 1973), is also particularly relevant to this case.

*Helicopteros* remains the Supreme Court's most recent statement on general jurisdiction. The case involved an attempt to bring a wrongful death action in Texas against a Colombian company for a helicopter crash in Peru. 466 U.S. at 409–12, 104 S.Ct. 1868. The defendant's contacts with Texas included (1) sending its Chief Executive Officer to Houston for a contract-negotiation session; (2) purchasing helicopters, equipment, and training services in Texas; and (3) sending personnel to Texas for training. *Id.* The Court found

these contacts insufficient to support general jurisdiction. *Id.* at 419, 104 S.Ct. 1868. The Court specifically declined to find jurisdiction supportable in Texas on the basis that there was no other appropriate forum, noting that it seemed possible for suit to have been brought against all defendants in either Colombia or Peru. *Id.* at 419 n. 13, 104 S.Ct. 1868.

*Nichols* involved an attempt to bring a products liability action in Maryland against an Illinois manufacturer. 991 F.2d at 1198. Defendant's contacts with Maryland included (1) employing seventeen to twenty-one Maryland sales representatives; (2) holding meetings in Maryland at least three times annually; (3) grossing between $9,000,000 and $13,000,000 in annual Maryland sales; and (4) contracting with a Maryland firm for research. *Id.* The court found these contacts insufficient to support general jurisdiction. *Id.* at 1200.

The only case cited by the parties in which the Fourth Circuit has found the exercise of general jurisdiction appropriate is *Lee v. Walworth Valve,* 482 F.2d 297 (4th Cir.1973). *Lee* involved a South Carolina widow's wrongful death action in South Carolina against the Pennsylvania manufacturer of a defective valve which had caused her husband's death on the high seas. *Id.* at 298. The defendant had two substantial contacts with South Carolina: (1) annual South Carolina sales between $180,000 and $400,000; and (2) sales representatives who spent approximately eighty days per year in South Carolina. *Id.* at 299. *Lee* stressed two atypical factors present in that case: (1) the cause of action arose on the high seas rather than another state whose courts might provide a more likely forum; and (2) South Carolina had an interest in vindicating the rights of its own citizen, particularly when that citizen was at risk of becoming a public charge. *Id.* at 300.

The Fourth Circuit has observed that "[o]ur decisions since *Lee* make clear that even the contacts in *Lee* were marginal." *ESAB Group v. Centricut, Inc.,* 126 F.3d 617, 624 (4th Cir.1997). Even *Lee* itself states that its finding of jurisdiction was at best a very close call, noting that "[w]e might well hold that Walworth's activity in South Carolina was not enough to make it generally answerable to any plaintiff who wished to maintain a transitory cause of action in the courts of that state." 482 F.2d at 300.

In this case, defendants' contacts with Virginia, which involve no revenue and only one representative spending only one day in Virginia, are far less substantial than even the "marginal" contacts in *Lee,* which involved annual revenues in excess of a $100,000 and several sales representatives spending approximately eighty days per year in the forum state. Although the special factors present in *Lee*—the lack of an alternative American forum and the state's interest in providing a convenient forum for its citizens—are both present here to some extent, these factors cannot support general jurisdiction where, as here, the contacts are otherwise so insubstantial.

### B. *Jurisdictional Discovery*

■■■ The "broad discretion" entrusted to district courts in their resolution of discovery problems applies to jurisdictional discovery. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 402 (4th Cir.2003). The court does not abuse its discretion to deny jurisdictional discovery when the plaintiff raises only "bare allegations" to dispute defen-

dant's affidavits denying jurisdictional acts or contacts. *McLaughlin v. McPhail,* 707 F.2d 800, 807 (4th Cir.1983); *see also Rich v. KIS Cal., Inc.,* 121 F.R.D. 254, 259 (M.D.N.C.1988) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery ... should it conclude that such discovery will be a fishing expedition.").

■■■ As defendants have presented affidavits which specifically deny jurisdictional acts or contacts, this court need not permit the defendants to engage in even limited jurisdictional discovery. It appears that there is little chance that discovery would uncover continuous, systematic, and substantial Virginia activities conducted by these defendants, and in all likelihood such discovery would only waste the parties' time and resources, constituting nothing more than a "fishing expedition." [5]

### IV. *Conclusion*

For the reasons stated above, the court **GRANTS** the motion of defendants The Sports Corporation and Winter to dismiss for lack of personal jurisdiction, and **DENIES** plaintiffs' motion for jurisdictional discovery. The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to all parties.

**IT IS SO ORDERED.**

---

**5.** A hearing was held on the jurisdictional and discovery motions on January 21, 2004, at which plaintiffs' counsel candidly admitted that plaintiffs did not have reason to suspect that defendants had engaged in extensive Virginia activities other than those already before the court. Counsel instead argued that

defendants had "avail[ed] themselves of ... the benefit of the majority of the American states, but only a little bit in each one." (Excerpt of Proceedings, Jan. 21, 2004, at 2.) Counsel appropriately acknowledged that plaintiff's argument was one "at the edge of personal jurisdiction." (*Id.*)