**ATLANTECH DISTRIBUTION, INC., Plaintiff,**

v.

**CREDIT GENERAL INSURANCE CO., et al., Defendants.**

**No. Civ.A. JFM–98–1688.**

United States District Court,
D. Maryland.

Nov. 10, 1998.

Robert Francis Carney, Michael Alden Stover, Wendy Ann Hartmann, Whiteford, Taylor & Preston, Baltimore, MD, for Plaintiff.

Neil L. Henrichsen, Paul H. Teague, Mitterhoff, Henrichsen & Stewart, Washington, D.C., Charles Mitchell, Rockville, MD, for Defendants.

## MEMORANDUM

MOTZ, Chief Judge.

Defendant and third-party plaintiff, Credit General Insurance, has brought this third-party action against third-party defendant Colonial Mechanical Corporation. Credit General seeks to hold Colonial Mechanical liable for any liability imposed upon Credit General by plaintiff Atlantech in the underlying litigation, as well as other declaratory relief. Colonial Mechanical has filed a motion to dismiss the third-party complaint for lack of personal jurisdiction or, in the alternative, for severance of the third-party complaint from the underlying litigation. For the reasons stated below, Colonial Mechanical's motion to dismiss will be granted.

## I.

Third-party defendant Colonial Mechanical performed work as a general contractor at the Loudoun Hospital Center in Lansdowne, Virginia, in 1996. Colonial Mechanical entered into a subcontract agreement with Absolute Enterprises, Inc. On April 16, 1996, Absolute Environmental Contractors, Inc., affiliated owner of Absolute Enterprises, executed a labor and material bond as principal, naming Credit General as surety and Colonial Mechanical as obligee. One of Absolute Enterprises' suppliers, Atlantech Distribution, Inc., has sued Credit General, as surety, alleging that Absolute Enterprises owes Atlantech for materials supplied for the Loudoun and two other projects. Credit General, an Ohio corporation, has filed a third-party complaint against Colonial Mechanical with respect to the Loudoun project.

Colonial Mechanical is a Virginia corporation with its principal place of business in Richmond, Virginia. All of the work performed on the Loudoun project was per-

formed in Virginia. Although Colonial Mechanical is registered to do business and maintains a registered agent in Maryland, it has not conducted any business in Maryland since 1993.

Colonial Mechanical promotes itself through an Internet site on the World Wide Web, which is accessible to Maryland residents with access to the Internet. On its Web site, Colonial Mechanical advertises itself as "a regional mechanical construction and service contractor," and states that it is willing to serve all areas within two hundred miles of Richmond, which includes a substantial portion of the state of Maryland.

## II.

■ Colonial Mechanical has moved to dismiss the third-party complaint for lack of personal jurisdiction. "A federal court sitting in diversity has personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir.1993). It has long been recognized that Maryland's long-arm statute, Md. Code Ann., Cts. & Jud.Proc. § 6–103, provides jurisdiction to the full extent permitted by due process. *Id.; McGann v. Wilson*, 117 Md.App. 595, 701 A.2d 873, 876 (Md.Ct. Spec.App.1997). Therefore, the inquiry collapses into an analysis of the constitutionality of subjecting Colonial Mechanical to the personal jurisdiction of this Court. Once a defendant raises a Rule 12(b)(2) defense, the plaintiff bears the burden of proving that the court can exercise personal jurisdiction over the defendant by a preponderance of the evidence. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir.1993).

■ For this Court to exercise personal jurisdiction over Colonial Mechanical, due process requires that it have certain minimum contacts with Maryland "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). A court may exercise either specific or general jurisdiction. Specific juris-

diction exists where the suit arises from a defendant's contacts with the forum state. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). General jurisdiction, which permits a court to subject a non-resident defendant to a suit in the forum wholly unrelated to any contact it has with the forum, exists only where the foreign defendant's in-state activities amount to "continuous and systematic" contact with the state. *Id.* at 414–15, 104 S.Ct. 1868.

■ The level of "minimum contacts" necessary to confer general jurisdiction is significantly higher than that required for specific jurisdiction. *See ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1364, 140 L.Ed.2d 513 (1998). It is only where a defendant's in-state operation is "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities" that it is proper for a court to exercise general jurisdiction over that defendant. *International Shoe*, 326 U.S. at 318, 66 S.Ct. 154. "[B]road constructions of general jurisdiction should be generally disfavored," *Nichols*, 991 F.2d at 1200, and courts will typically only assert general jurisdiction over nonresidents "who are essentially domiciled within the forum state." *Corry v. CFM Majestic, Inc.*, 16 F.Supp.2d 660, 663 (E.D.Va.1998). The question then "is whether a defendant's contacts with the forum state are so substantial that they amount to a surrogate for presence and thus render the exercise of sovereignty just, notwithstanding the lack of physical presence in the state." *ESAB Group, Inc.*, 126 F.3d at 623.

■ Aside from maintaining a registered agent here, Colonial Mechanical's sole contact with Maryland is its Web site, which is accessible by Maryland residents with access to the Internet. The advent and expansion of the Internet have brought challenges to district courts attempting to apply traditional personal jurisdiction principals to a modernizing world. Although this is a developing area of law, courts addressing the effect of a company's Internet presence on personal jur-

isdiction are in agreement that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com. Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997). After reviewing the relevant cases then available, the *Zippo* court identified three types of Internet presences and their effects on personal jurisdiction:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* Although *Zippo* was a specific jurisdiction case, its analysis has been widely accepted and is useful in understanding the effect of Colonial Mechanical's Internet presence on the case at bar. *See, e.g., Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) (citing *Zippo* with approval); *Mieczkowski v. Masco Corp.*, 997 F.Supp. 782, 786–87 (E.D.Tex.1998) (relying on *Zippo* analysis); *Blumenthal v. Drudge*, 992 F.Supp. 44, 52–56 (D.D.C.1998) (same); *Blackburn v. Walker Oriental Rug Galleries, Inc.*, 999 F.Supp. 636, 638–39 (E.D.Pa.1998) (same); *SF Hotel Co. v. Energy Inv., Inc.*, 985 F.Supp. 1032, 1034–35 (D.Kan.1997) (same); *Weber v. Jolly Hotels*, 977 F.Supp. 327, 333 (D.N.J.1997) (same).

Colonial Mechanical's Web site can only be characterized as passive. Internet users accessing the site find a description of the company, its capabilities, and a partial list of its customers. In addition, the company's address and Virginia telephone and facsimile numbers are provided. Maryland residents wishing to contact Colonial Mechanical must write to it in Virginia or place a long-distance telephone call. The Web site does not afford Internet users the ability to communicate with Colonial Mechanical electronically. At most, therefore, Colonial Mechanical's Web site is a passive advertisement. *See Weber*, 977 F.Supp. at 334 ("exercising [general] jurisdiction over a defendant who merely advertises its services or product on the Internet would violate the Due Process Clause of the Fourteenth Amendment"); *see also SF Hotel Co.*, 985 F.Supp. at 1035 (no general jurisdiction where foreign defendant maintained passive, information providing Web site with no provision for direct communication between defendant and person accessing Web site).

Colonial Mechanical's contacts with Maryland are insufficient to constitutionally subject it to the general personal jurisdiction of this Court. Colonial Mechanical has done no work in Maryland since 1993. Although its passive Web site can be accessed by Maryland Internet users, those that do access the site cannot interact with the company through the Internet. Colonial Mechanical's Web site simply does not rise to the level of "continuous and systematic" contacts required by the constitution. Further, just as Maryland Internet users can access the site, so can all Internet users around the world. To subject Colonial Mechanical to general personal jurisdiction based on its Internet presence would mean that it would presumably be subject to general personal jurisdiction in every jurisdiction in the country, thereby allowing a plaintiff to sue it for any matter anywhere in the nation. This the constitution does not permit.

Because it would offend any reasonable notion of "fair play" for this Court to find Colonial Mechanical's contacts with Maryland so substantial that it could be hauled into court here on any matter, Colonial Mechani-

cal's motion to dismiss for lack of personal jurisdiction will be granted.