**DESIGN88 LTD, Plaintiff,**

v.

**POWER UPTIK PRODUCTIONS, LLC, et al., Defendants.**

**No. Civ.A. 3:00CV00039.**

United States District Court, W.D. Virginia, Charlottesville Division.

Feb. 12, 2001.

Kevin L. Newsome, Steven W. Blaine, Alfred J.T. Byrne, Charles Michael Sims, LeClair Ryan, A Professional Corp., Richmond, VA, for Plaintiff.

Michael Eugene Derdeyn, McGuire, Woods, Battle & Boothe, Charlottesville, VA, Maury S. Epner, Joseph P. Suntum, Miller, Miller & Canby, Rockville, MD, for Defendants.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

Before the court is the defendants' May 15, 2000 motion to dismiss or, in the alternative, transfer venue. The matter was submitted to the presiding Magistrate Judge for proposed findings of fact and a recommended disposition. *See* 28 U.S.C. § 636(b)(1)(B). On August 9, 2000, Magistrate Judge B. Waugh Crigler returned a Report and Recommendation, recommending that the court deny the defendants' motion in full. The defendants timely objected to the Report and Recommendation and the plaintiff responded thereto. The court has performed a *de novo* review. *See* 28 U.S.C. § 636(b)(1)(B).

### I.

This matter bristles with factual controversy. In considering a motion to dismiss for lack of personal jurisdiction, the court must draw all reasonable inferences, and resolve all factual disputes in favor of the non-moving party. *See Mylan*

*Laboratories, Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir.1993). Accordingly, solely for the purpose of deciding the defendants' pending motion, the facts are set forth below in the view most favorable to the plaintiff. The court is aware that the defendants' version of facts differs greatly from that which is recited below, but the adjudication of factual disputes is not the present task of the court.

Plaintiff, Design88, designed, implemented, and administered a website called The Underground Trader. The Underground Trader website caters to day traders, providing services to its members for a fee. The Underground Trader was a project jointly undertaken by the plaintiff and Defendants Jea Yu and Patrick Connelly. In August 1998, Yu contacted Cameron Eppler, president of Design88, to discuss the Underground Trader. Subsequently, at the urging of Yu and Connelly, Yu, Connelly, and two members of Design88 (Eppler and Ha Tran) met in Tysons Corner, Virginia. At the Tysons Corner meeting, the parties discussed and agreed that the plaintiff would perform certain web design, implementation, and maintenance functions in exchange for 10% of the profits from the Underground Trader website. The parties entered into a Master Partnership Agreement, which was ultimately amended to include Yu, Connelly, Melvin Miller, and Power Uptik Productions, LLC ("PUP"), and to give Plaintiff a 13% interest in The Underground Trader. The parties often referred to themselves as partners. In furtherance of the partnership, and with the knowledge of the defendants, the plaintiff performed most of its duties on behalf of The Underground Trader from the plaintiff's office in Charlotttesville, Virginia, which duties included: web design and development; hosting the website from the Charlottesville server; soliciting Underground Trader membership through Internet and national print campaigns; processing membership applications; providing technical support to members (at least 100 of whom are Virginia residents);

monitoring access to the website, with authority to block unauthorized users; and negotiating on behalf of The Underground Trader and forming corporate alliances.

Eventually, the relationship between the parties soured, and the defendants' terminated their relationship with the plaintiff, effective April 21, 2000. The plaintiff brought a declaratory judgment action against defendants in a Virginia state court, seeking, among other things, a determination that a partnership existed between the parties. The defendants removed the action to this court and subsequently filed the motion to dismiss or transfer, to be decided herein.

## II.

■ The defendants moved to dismiss this action for lack of in personam jurisdiction over all four defendants, alleging that both the corporation (PUP) and the individual defendants (Yu, Connelly, and Miller), had insufficient contacts with Virginia. Because the defendants' motion to dismiss relies on pleadings, affidavits and supporting documents, the plaintiff need only make a prima facie showing of jurisdiction. *See Mylan,* 2 F.3d at 60; *Frontline Test Equipment, Inc. v. Greenleaf Software, Inc.,* 10 F.Supp.2d 583, 588 n. 6 (W.D.Va. 1998).

■ Whether the court has jurisdiction over the defendants is governed by the Virginia long-arm statute, Va.Code Ann. § 8.01–328.1. *See ESAB Group, Inc. v. Centricut,* 126 F.3d 617, 622 (4th Cir. 1997). Virginia's long-arm statute extends personal jurisdiction to the constitutionally permissible limits of the Due Process Clause of the Fifth Amendment. *See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners,* 229 F.3d 448, 450 (4th Cir.2000). The Due Process Clause requires sufficient minimum contacts with a forum state such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v.*

*Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

■ "The touchstone of minimum contacts remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state." *Lesnick v. Hollingsworth & Vose Co.,* 35 F.3d 939, 945 (4th Cir.1994). In determining whether the four defendants have had minimum contacts with Virginia sufficient to make them fairly subject to the Commonwealth's jurisdiction, the court takes into consideration all of the relevant facts, *see id.* at 945–46 (listing factors to consider), and does so in the light most favorable to the plaintiff, *see Mylan,* 2 F.3d at 60. To that end, there are several factors which favor this court's finding that plaintiff has made a prima facie showing of personal jurisdiction over the defendants.

First, the plaintiff alleges that the defendants' solicited the plaintiff's involvement in the joint venture. The plaintiff further alleges that certain of the defendants insisted on and then attended a meeting with the plaintiff in Virginia, at which meeting the contours of the partnership were agreed upon. Although these facts are contested, taking them in the light most favorable to the plaintiff, these factors favor the exercise of personal jurisdiction over the defendants. *See e.g., Diamond Healthcare,* 229 F.3d at 451 (considering factor of initiation of the relationship).

Second, the plaintiff alleges that it entered into a Master Partnership Agreement with the defendants, and that the parties regularly conducted themselves and referred to themselves and as partners to a joint venture.[1] As a partner of the defendants, the plaintiff's Virginia activity in furtherance of the partnership could fairly subject all of the defendants to personal jurisdiction in the Commonwealth. *See, e.g., Young v. F.D.I.C.,* 103 F.3d 1180, 1193 (4th Cir.1997) (possible basis of personal jurisdiction over foreign corporation if doing business as a single partnership with a corporation of the forum state); *see also Willis v. Semmes, Bowen & Semmes,* 441 F.Supp. 1235, 1240 (E.D.Va.1977) (participation in Virginia lawsuit by partner and agent subjected Maryland partnership to Virginia jurisdiction).

Third, the subject of the alleged partnership was The Underground Trader, an e-business venture. Thus, questions of e-mail communications, teleconferences, web design, implementation and administration all potentially come into play in making a determination that courts have grappled with when the communications only involved questions of telephone calls and fax transmissions. Although mention of the Internet in a legal context invokes a sense of venturing into unchartered territory, courts must remain true to tested principles of jurisprudence. Thus, although the parties maintained a website accessible in Virginia, the pertinent inquiry remains whether the defendants purposefully availed themselves of the privilege of conducting activities in Virginia, thereby invoking the benefits and protections of Virginia law. *See Lesnick,* 35 F.3d at 945–46 (citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Burger King v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); and *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

The court recognizes that this issue is not subject to bright line rules and—like

---

1. The court notes that the jurisdictional question of partnership is inextricably intertwined with the merits of this case, which seeks a declaratory judgement as to the very existence of the alleged partnership. The court recognizes that the plaintiff's burden at this stage is the relatively light one of making a prima facie showing of jurisdiction. The allegations of partnership support the prima facie burden. However, the court explicitly notes that it does not herein pass on the ultimate merits of the question of the existence of a partnership or the actual nature of the parties' relationship.

any other question of personal jurisdiction—must be determined on a case by case basis. The few federal circuit courts to address the question of personal jurisdiction over non-resident owners of websites have been consistent in holding that mere access to a passive website in the forum state is insufficient to support a finding of personal jurisdiction. *See, e.g., Remick v. Manfredy,* 238 F.3d 248, 259, n. 3 (3rd Cir.2001) (finding no nationwide jurisdiction based on accessibility of website that posts information and advertisements); *GTE New Media Serv., Inc. v. BellSouth,* 199 F.3d 1343, 1349–50 (D.C.Cir.2000) (Edwards, C.J.) (same); *Mink v. AAAA Development LLC,* 190 F.3d 333, 336–37 (5th Cir.1999) (same). However, as a membership-based website on day trading, The Underground Trader can not be viewed as a passive website that simply posts public information. Thus, the court must delve further into the nature of the defendants contacts with Virginia through Plaintiff and The Underground Trader website to consider fully this factor in the jurisdictional analysis.

The defendants allegedly solicited and maintained a relationship with the Virginia plaintiff to design, implement, and maintain The Underground Trader's website, as detailed infra, Part I. Throughout the parties' relationship, the defendants were aware that the plaintiff performed the predominant amount of work on the website from its Charlottesville office. *See, e.g., Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.,* 205 F.3d 1244, 1247–48 (10th Cir.2000) (exercising personal jurisdiction over non-resident Internet service provider for its knowing use of resident plaintiff's e-mail server); *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1263–65 (6th Cir. 1996) (exercising personal jurisdiction over non-resident defendant who contracted to distribute software through Ohio Internet server and regularly sent software files to the Ohio server via email). The Underground Trader and the defendants' relationship with the plaintiff in furtherance thereof militate in favor the exercise of personal jurisdiction over the defendants. *See Burger King,* 471 U.S. at 475–76, 105 S.Ct. 2174 ("where the defendant deliberately has ... created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well").

Contrary to the court's conclusion, the defendants take the position that "the individuals in this case labor before computer screens, but their physical locations are entirely irrelevant to their work, as the fruits of their labors exist only in cyberspace." Def.Mot. to Dismiss at 1. Although the defendants appear to be correct in their contention that much of the activity in this matter occurred in cyberspace, this can not signify that the increasingly large number of those who deal in e-commerce shall not be subject to jurisdiction in any earthly court. *See, e.g., Burger King,* 471 U.S. at 476, 105 S.Ct. 2174 (recognizing that technological advances obviating the need for physical presence in a forum would not necessarily frustrate personal jurisdiction). There being no District Court of Cyberspace, the defendants' argument that laboring on the Internet defeats traditional personal jurisdiction is unpersuasive; Defendants will have to settle begrudgingly for the Western District of Virginia.

### III.

■ To that end, the court has also performed a *de novo* review of the Magistrate Judge's recommendation that the court deny the defendants motion to transfer venue for forum non conveniens, pursuant to 28 U.S.C. § 1404(a). The defendants make several arguments in support of their motion to transfer venue to Maryland, relying predominantly on an alleged

oral agreement of the parties to resolve disputes in Maryland (the existence of which is hotly contested) and the defendants' insistence that Maryland is the only court of proper jurisdiction. The court is persuaded neither by the defendants' various arguments for transfer, nor by their objections to the Report and Recommendation, much of which objections are either a recitation of the defendants' jurisdictional arguments or factually inapposite to the defendants' burden of showing that substantial factors weigh in favor of rejecting the plaintiff's choice of forum. *See Frontline Test Equipment, Inc. v. Greenleaf Software, Inc.*, 10 F.Supp.2d 583, 590 (W.D.Va.1998) (citing *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir.1984)). In the interest of justice, having considered the parties' positions regarding convenience to the witnesses and parties, and there presently being no persuasive argument to the contrary, the court shall honor the plaintiffs choice of forum.

### IV.

For the reasons stated herein, the Magistrate Judge's Report and Recommendation shall be adopted in its entirety and the defendants' motion to dismiss or, in the alternative, transfer, shall be denied in its entirety.