**VIRTUALITY L.L.C. and Now Corporation, Plaintiffs,**

v.

**BATA LIMITED, Defendant.**

**No. CIV H–00–3054.**

United States District Court, D. Maryland.

April 3, 2001.

Timothy C. Lynch, Shar, Rosen & Warshaw, LLC, Baltimore, MD, Michael P. Marsalese, Bloomfield Hills, MI, for plaintiffs.

Thomas D. Renda, Siskind, Grady, Rosen & Hoover, P.A., Baltimore, MD, for defendant.

## MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, Senior District Judge.

This civil action arises as a result of a an internet domain name [1] dispute between the parties. Besides seeking under federal trademark law a declaratory judgment ordering that defendant Bata Limited ("Bata") has no rights or interests in certain domain names registered by plaintiff Virtuality, L.L.C. ("Virtuality"), plaintiffs seek compensatory damages under Maryland law.

Presently pending before the Court is defendant's motion to dismiss the complaint on the grounds that defendant Bata

is not subject to jurisdiction in Maryland either as to plaintiffs' federal claim or as to their claims asserted under Maryland law. Memoranda and exhibits in support of and in opposition to this motion have been filed by the parties.

Following its review of the pleadings, memoranda and exhibits, this Court has concluded that no hearing is necessary for a decision on the pending motion. *See* Local Rule 105.6. For the reasons stated herein, the motion to dismiss of defendant Bata will be granted in part and denied in part.

## I

### *Background Facts*

Plaintiff Virtuality is a Michigan limited liability company which, according to the complaint, is the predecessor to plaintiff NOW Corporation ("NOW"), a Nevada corporation.[2] Defendant Bata is a federally chartered Canadian corporation, having its headquarters in Toronto, Canada.

Bata and its affiliated companies throughout the world are the registered owners of numerous registered trademarks which use the word "POWER" in different forms. Licensees of Bata have made extensive use of its POWER trademarks on footwear sold in the United States and elsewhere throughout the world. Bata is also the registered owner of the internet domain names "bata.com" and "powerfootwear.com." Bata has maintained a website at "www.bata.com" since 1995. In 1999, Virtuality began preliminary work on a website-based business which would provide internet users with a no-cost search engine. This website was to feature interactive advertising based

---

1. Web pages on the internet are designated by an address called a "domain name." *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 492 (2d Cir.2000).

2. According to defendant Bata, both Virtuality and NOW are solely owned by the same individual.

upon search engine and browser software being developed. On September 29, 1999, Virtuality registered the domain name "powershoes.com", and on April 17, 2000, Virtuality registered the domain names "powershoes.net" and "powershoes.org". Each of these domain names was registered with domain name Registrar Alabanza, Inc. ("Alabanza"). On February 10, 2000, plaintiff NOW was incorporated under the laws of the State of Nevada.

Virtuality has agreed to submit disputes relating to its three domain names to the Uniform Domain Name Dispute Resolution Policy and Rules of the Internet Corporation of Assigned Names and Numbers ("ICANN"). On July 21, 2000, Bata filed a complaint against Virtuality before a dispute resolution provider authorized by ICANN. That provider is known as "eResolution" and is headquartered in Montreal, Canada. In that complaint, Bata sought to cancel, pursuant to the aforesaid Policy and Rules, Virtuality's domain names "powershoes.com," "powershoes.net" and "powershoes.org." Since Virtuality has agreed to submit domain name disputes to a dispute resolution provider authorized by ICANN, Bata challenged in the eResoluton administrative proceeding Virtuality's right to use the three domain names at issue.

On August 28, 2000, Virtuality filed with eResolution its response to Bata's complaint in the administrative proceeding. Plaintiff NOW did not join in that response nor did plaintiff NOW participate in any way in the Canadian administrative proceeding. Riccardo Roversi was the single adjudicator chosen by eResolution to decide the domain name dispute between Virtuality and Bata.

On September 20, 2000, Mr. Roversi rendered his decision. He found (1) that

Virtuality's domain names were confusingly similar to Bata's registered domain name "powerfootwear.com"; (2) that Virtuality was making no legitimate use of its domain names; and (3) that Virtuality's behavior fell within the definition of "bad faith" established by Article 4(b)(1) of ICANN's Uniform Domain Name Dispute Resolution Policy. Accordingly, Mr. Roversi ordered that the domain names "powershoes.com," "powershoes.net," and "powershoes.org" be transferred to Bata. No decision was made by the adjudicator with respect to any interests which NOW might have in Virtuality's domain names.

As required by the ICANN Policy and Rules, Bata had agreed to:

> submit, with respect to any challenge to a decision in this administrative proceeding canceling or transferring the domain name, to the jurisdiction of the Courts in at least one specified Mutual Jurisdiction (as that term is defined in the Policy).

Under the Policy and Rules, Bata therefore had, if there was a court challenge to a decision in the administrative proceeding, the choice of electing either the jurisdiction of the court where the registered owner of the domain name at issue carried on its business or the jurisdiction of the court where the domain name Registrar Alabanza carried on its business. As its choice of jurisdiction for any challenge by Virtuality to the adverse decision rendered in the Canadian administrative proceeding, Bata elected the jurisdiction of the court where Registrar Alabanza did business. Alabanza carries on its business in Baltimore, Maryland.

On October 11, 2000, plaintiffs filed the pending complaint in this Court.[3] *Inter*

---

3. On October 5, 2000, an almost identical complaint was filed by plaintiff NOW in the United States District Court for the Eastern District of Michigan. When counsel for NOW

*alia,* they assert that the adjudicator's award contains material errors of fact and misrepresentations and they seek appropriate redress in this civil action.

## II

### *Plaintiffs' Claims*

Count I of the complaint is brought under federal trademark law and asks this Court to order that plaintiff's use of the domain name "powershoes" does not cause confusion as to the origin, sponsorship or approval of the owner of the registered mark "POWER" and that plaintiff has all rights and interests in its three registered domain names.

Counts II—VII seek compensatory damages under Maryland law. Count II alleges that defendant Bata published false and defamatory statements in the administrative proceeding and branded plaintiff a "cybersquatter." Count III asserts that defendant Bata caused statements to be published slandering plaintiff's title in multiple domain name registrations and associated business units.

Count IV is based on a theory of conversion by fraud. It is alleged that defendant Bata caused to be published over the worldwide internet statements which were false and calculated to cause the arbitrator to mistakenly order a transfer of several domain name registrations from plaintiff to defendant. Count V seeks a recovery for "reverse passing off." It is alleged that plaintiff is the proper owner of the mark "powershoes" for internet and marketing services and that defendant does not have any right to the powershoes series of domain names.

Count VI seeks a recovery for fraud and unfair competition. In Count VII, plaintiffs allege that defendant's conduct constituted tortious interference with a prospective economic advantage.

As relief, plaintiff seeks a declaratory judgment, compensatory damages, punitive damages, attorneys' fees and costs.

## III

### *Applicable Principles of Law*

Under Rule 12(b)(2), F.R.Civ.P., a civil action is subject to dismissal if the forum court lacks the requisite personal jurisdiction. In support of its motion to dismiss, defendant Bata argues that this Court lacks jurisdiction of plaintiffs' Count I claim because, according to the complaint, the three domain names were assigned by Virtuality to NOW and because Bata has never consented to jurisdiction in Maryland of any suit brought by NOW. Rule 17(a), F.R.Civ.P. requires that every action be commenced in the name of the real party in interest.

In support of its motion to dismiss Counts II—VII, defendant Bata argues that it is not subject to either the specific jurisdiction or the general jurisdiction of this Court by virtue of any activities within Maryland. With respect to causes of action not raising federal questions, personal jurisdiction may be exercised (1) if authorized by Maryland's Long Arm statute, Md.Code Ann. Cts. & Jud. Proc. § 6–103 and (2) if a defendant has "minimum contacts" in Maryland such that the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. *Atlantech Distr., Inc. v. Credit General Ins. Co.,* 30 F.Supp.2d 534, 536 (D.Md.1998). Once a defendant raises a Rule 12(b)(2) defense, the plaintiff bears the burden of proving that the court can exercise personal jurisdiction over the

learned that Bata had elected the Maryland jurisdiction of the Registrar for the conduct of the litigation, NOW and Virtuality filed this action in this Court on October 11, 2000.

defendant. *Atlantech*, 30 F.Supp.2d at 536. A plaintiff's burden is even higher when the defendant hails from a foreign nation rather than from another state. *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 852 (9th Cir.1993).

■ A court may exercise either specific or general jurisdiction. Specific jurisdiction exists where the claim arises out of the defendant's contacts with the forum state. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). General jurisdiction permits a court to subject a non-resident defendant to a suit in the forum wholly unrelated to any contacts in the forum which resulted in the creation of the claim. General jurisdiction exists only where the foreign defendant's in-state activities amount to "continuous and systematic" contact with the state. *Id.* at 414–15, 104 S.Ct. 1868.

Applying these principles to the circumstances of this case, this Court concludes (1) that the claims of plaintiff NOW must be dismissed; (2) that defendant's motion to dismiss Count I of the complaint must be denied; and (3) that defendant's motion to dismiss Counts II—VII of the complaint must be granted.

## IV

### *Count I*

Although it had previously been incorporated on February 10, 2000, plaintiff NOW did not participate in any way in the Canadian administrative proceeding. Defendant Bata therefore did not consent under ICANN Policy and Rules to jurisdiction in Maryland of any court challenge by plaintiff NOW to the decision rendered by the adjudicator Riccardo Roversi. As defendant Bata notes, the complaint alleges that assets of Virtuality, including ownership of the domain names at issue here, have been transferred by plaintiff Virtuality to plaintiff NOW. Defendant argues that since plaintiff Virtuality is no longer the registered owner of the domain names in question and since Bata has not consented to the jurisdiction of this Court over any claim brought by plaintiff Now, Count I of the complaint should be dismissed for lack of jurisdiction.

In its opposition to defendant's motion, plaintiffs assert that plaintiff Virtuality remains the sole and rightful owner of the disputed domain names. At the time that the complaint was filed, it was expected that Virtuality and NOW would have been merged. However, this never occurred. As indicated by plaintiffs' Exhibit 9, submitted with their opposition to defendant's motion to dismiss, Virtuality remains the sole and rightful owner of the domain names in question.

Defendant Bata argues that plaintiffs have judicially admitted in the complaint that following the incorporation of NOW in February of 2000, Virtuality's interests in the three domain names were transferred to NOW. Defendant relies on *Soo Line Railroad Co. v. St. Louis Southwestern R'wy Co.*, 125 F.3d 481, 483 (7th Cir.1997) where the Court, quoting from *Keller v. United States*, 58 F.3d 1194, 1198 n. 8 (7th Cir.1995), stated: "Judicial admissions are formal concessions in the pleadings or stipulations by a party or its counsel that are binding upon the party making them."

■ On the record here, this Court concludes that plaintiff Virtuality is not bound by the allegations in the complaint indicating that NOW was at the time the complaint was filed the owner of the disputed domain names. The allegations in question were, by inadvertence, erroneous and do not amount to formal concessions or stipulations made by counsel for the plain-

tiffs.[4] At the time when the complaint was filed, counsel for plaintiffs, out of an abundance of caution, included NOW as a plaintiff because it was anticipated that the two entities would have been merged by the time the complaint was filed. No such merger ever occurred, and Virtuality therefore remains the owner at this time of the disputed domain names. That allegations of a complaint are not later supported by facts established by the record is hardly an unusual occurrence. Based on the pleadings and exhibits which have now been filed here, this Court is satisfied that Virtuality is the real party in interest here and that the claim asserted by it in Count I is not subject to dismissal under Rule 17(a).[5]

■■■ The Court further concludes that it has jurisdiction over the federal trademark claim asserted by plaintiff Virtuality in Count I of the complaint. When it filed its complaint under the ICANN Policy and Rules, defendant Bata consented to the jurisdiction of a court selected by it for consideration of any challenge to a decision in the administrative proceeding. Bata elected during the administrative proceeding to submit to a Maryland court to hear and adjudicate Virtuality's challenge to the decision made in that proceeding. Plaintiff Virtuality has therefore quite properly brought its federal trademark claim against Bata in this Court. However, under the circumstances here, NOW must be dismissed as a plaintiff. NOW and Virtuality were never merged, and NOW does not at this time own an interest in the domain names at issue. Since NOW did not participate in any way in the Canadian administrative proceeding, defendant Bata did not consent to the jurisdiction of this Court as to a claim brought by NOW against Bata.

## V

### *Counts II—VII*

■■■ Whether or not this Court has jurisdiction of the claims asserted by Virtuality under Maryland law involves quite different considerations. Under § 6–103(b)(4) of Maryland's Long Arm statute, a defendant's contacts with Maryland must be extensive, continuous and systematic before the defendant can be held to be subject to specific jurisdiction in a Maryland court. *Nichols v. G.D. Searle & Co.,* 783 F.Supp. 233, 237 (D.Md.1992). For this Court to be empowered to assert personal jurisdiction over Bata as to Counts II—VII of the complaint, the Court must find that (1) Bata has certain minimum contacts or ties to Maryland such that (2) maintenance of Virtuality's state law claims would not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

As established by the affidavit of Leslie Tenenbaum, Bata's Secretary and Assistant General Counsel, this Canadian corporation does not engage in the manufacture or sale of any products in the United States. Bata's headquarters are in Toronto, Canada. Although it owns a number of trademarks registered in the United States and in other countries relating to the "POWER" brand of athletic footwear

---

4. The President of both Virtuality and NOW believed at the time that the complaint was filed here that the merger had occurred. On further review of the circumstances, counsel has now determined that no merger had ever taken place.

5. Even if the Court were to decide that the claim asserted by Virtuality in Count I should be dismissed, Virtuality would in any event be permitted at this early stage of these proceedings to file an amended complaint accurately describing the true ownership of the domain names at issue here.

and apparel, Bata does not engage in the sale of such athletic footwear in Maryland. Instead, it licenses the right to sell POWER footwear products to distributors in California and New Jersey.

In opposing defendant's motion, plaintiffs contend that even though defendant Bata is not present in Maryland, its admitted prior website efforts throughout the United States and in Maryland constitute a "persistent course of conduct in the State" under § 6–103(b)(4). According to plaintiff Virtuality, the Maryland legislature intended by § 6–103(b)(4) to expand Maryland's exercise of personal jurisdiction to the limits allowed by the due process clause of the Fourteenth Amendment. Plaintiff Virtuality argues that because of Bata's website activity, the due process clause would not be offended if this Court exercised jurisdiction over the claims asserted by Virtuality in Counts II—VII of the complaint. This Court must disagree. Neither specific jurisdiction nor general jurisdiction exists insofar as Virtuality's state law claims are concerned.

This case, like some of those cited by the parties, involves the rapidly evolving area of electronic commerce jurisdiction. *See Roche v. Worldwide Media, Inc.,* 90 F.Supp.2d 714, 716 (E.D.Va.2000); *Coastal Video Communications Corp. v. The Staywell Corp.,* 59 F.Supp.2d 562 (E.D.Va. 1999). In determining whether in a case of this sort due process considerations have been satisfied, courts have distinguished between active and passive websites. *Atlantech,* 30 F.Supp.2d at 537; *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997). An active site involves situations where a defendant clearly does business over the internet. *Zippo Mfg.,* 952 F.Supp. at 1124. If the defendant enters into contracts with residents of a foreign jurisdiction which involve the knowing and repeated transmission of computer files over the internet, personal jurisdiction is therefore proper. *Id.* A passive site involves a situation where a defendant has simply posted information on an internet website which is accessible for users in foreign jurisdictions. *Id.* Since a passive site does little more than make information available to interested persons, it is not a ground for the exercise of personal jurisdiction. *Id.*

Applying these principles here, this Court concludes that, insofar as Counts II—VII are concerned, it cannot in this case constitutionally assert *in personam* jurisdiction over defendant Bata because of Bata's maintenance of a website presence in Maryland posted by a website provider located in Toronto, Canada. Bata's site is clearly a passive one, inasmuch as Bata does not sell products nor conduct any other commercial activity for profit over the internet. Sales of POWER brand footwear in Maryland are handled by licensees of Bata. As Chief Judge Motz held in *Atlantech,* contacts with Maryland of the type involved here are insufficient to constitutionally subject a non-resident defendant to the general personal jurisdiction of this Court. 30 F.Supp.2d at 537. As in *Atlantech,* defendant Bata did nothing more here than place information on a website on the internet with the knowledge of a possibility that someone in the State of Maryland might access the site. *Id.* In refusing to exercise personal jurisdiction based on contacts similar to those involved here, the Court in *Roche* stated:

> Such a finding of personal jurisdiction, based on the fact that a web page is accessible in Virginia, could lead, alarmingly, to nationwide jurisdiction over defendants—or to anyone who posts a web page for that matter... Given the indefinite and infinite nature of the Internet, and the accessibility of the World Wide Web to anyone with a laptop computer

and a telephone line, such a finding would not only be unconstitutional, but egregiously impractical for purposes of judicial economy.

90 F.Supp.2d at 719.

Finally, there is no merit to plaintiffs' argument that Bata, by filing a complaint under the ICANN Policy and Rules, consented to jurisdiction in Maryland for the purpose of its consideration of plaintiffs' common law and statutory claims. Clearly, Bata's consent to the jurisdiction of this Court for the limited purpose of reviewing the Canadian administrative decision cannot serve as the basis for the Court's exercise of general jurisdiction in Maryland as to other claims asserted by Virtuality. Bata's consent to jurisdiction related solely to the dispute between it and Virtuality as to the ownership of the domain names at issue.

### VI

#### *Conclusion*

For the reasons stated herein, it is this 3 day of April, 2001 by the United States District Court for the District of Maryland,

ORDERED:

1. That the motion to dismiss of defendant Bata Limited is hereby granted in part and denied in part;

2. That the claims of plaintiff NOW Corporation are hereby dismissed;

3. That the motion to dismiss of defendant Bata Limited is hereby denied as to Count I of the complaint;

4. That the motion to dismiss of defendant Bata Limited is hereby granted as to Counts II, III, IV, V, VI and VII of the complaint; and

5. That defendant Bata Limited is hereby directed to file within 15 days an answer to Count I of the complaint.