**AMERICAN INFORMATION CORPORATION**

v.

**AMERICAN INFOMETRICS, INC.**

No. CIV. JFM–00–3288.

United States District Court,
D. Maryland.

April 12, 2001.

Sherry H. Flax, Saul, Ewing, Weinburg & Green, Baltimore, MD, for plaintiff.

Harvey S. Jacobs, Donna M. Coles Johnson, Jacobs and Associates, Washington, DC, for defendant.

## MEMORANDUM OPINION

MOTZ, District Judge.

In this case American Information Corporation asserts federal trademark, Maryland common-law, and Maryland statutory claims against American Infometrics, Inc., for the latter's use of the service mark "AINET" and the World Wide Web address "ainet.com." American Infometrics has moved to dismiss all claims for lack of personal jurisdiction. F.R. Civ. P. 12(b)(2). For the reasons given below, the motion will be granted.

### I.

American Information Corporation, based in Calverton, Maryland, sells Internet access services, hosting of Web sites, design of Web sites, and security services for Web sites. The company has grossed over $3 million, selling to customers "throughout the United States and the world, including in Maryland." Compl. at ¶¶ 9, 12. The company has registered the

service mark "AINET" with the United States Patent and Trademark Office. Compl. at ¶ 10.

American Infometrics is based in Modesto, California, and sells Internet access and services to individuals and corporations. It maintains a World Wide Web site identified as "ainet.com" that can be viewed by anyone with access to the World Wide Web, whether the viewer is located in Maryland or anywhere in the world. The Web site provides some information and advertising to the general public, including links to search engines and price lists for prospective residential and commercial customers, and some information and services for paying customers, including usage records and technical support. A visitor to the Web site may enter his or her basic contact information, including name, address, phone, and e-mail, into a form, and the site promises a response from sales representatives of American Infometrics within a few days to determine "availability" of the company's services in the visitor's area. A visitor may submit his or her resume for jobs available at American Infometrics. A visitor may not enter into a contract, purchase goods or services, or transact business on the Web site.

The site includes small banners proclaiming that two Microsoft products are used to run the site. Opp. Ex. (Mar. 2, 2001) (www.ainet.com). These could be construed as advertisements.

The site includes several references to service within California.[1] In addition, in the past, the site has proclaimed "AI PROVIDES DSL ACROSS CALIFORNIA & U.S.!" as a central link on its home page, www.ainet.com. Opp. Ex. (Feb. 28, 2001).[2] (As of March 1, 2001 (when part of the exhibit to the plaintiff's opposition was apparently printed) and March 28, 2001 (when the Court took judicial notice of the site's contents), the only such link on the site read only "AI PROVIDES DSL ACROSS CALIFORNIA!" Opp. Ex. (Mar. 1, 2001) (www.ainet.com).) Finally, the site notes that customers of American Infometrics can gain access to their "ainet.com e-mail from any computer with Internet access." Opp. Ex. (Mar. 1, 2001) (www.ainet.com/start.html).

The president of American Infometrics, Andrew B. Goreff, affirms that the company has never had a place of business, customers, licenses, or certification in Maryland. According to Goreff's affidavit, the company has never had an inquiry about its services from anyone in Maryland, and has never solicited customers in Maryland. Its employees, officers, agents, and directors have never traveled to Maryland to conduct company business.

II.

American Information Corporation has the burden to show, by a preponderance of the evidence, that this Court has specific personal jurisdiction over American Infometrics.[3] *Atlantech Distri-*

---

1. After references to the company's history in San Francisco and then Modesto, California, the site explains that "AI sent the area's first packet of information over the Internet in the fall of 1994. Since then AI has been the region's leading Internet Service Provider by introducing Modesto businesses and individuals to the latest Internet and Web technologies...." A Modesto street address appears on the company's home page and on other pages.

2. The first page of the exhibit to the opposition is a print-out of a page copied and stored by the World Wide Web site google.com, showing part of the home page www.ainet.com at some point before the search date of February 28, 2001.

3. American Information Corporation does not argue that the Court has general jurisdiction over American Infometrics.

*bution, Inc. v. Credit Gen. Ins. Co.*, 30 F.Supp.2d 534, 536 (D.Md.1998). As Maryland law permits long-arm jurisdiction to the fullest extent permitted by the limits of constitutional due process, *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir.1993), the constitutional test for personal jurisdiction applies. If a party "purposefully avails itself of the privilege of conducting activities within" Maryland, "creat[ing] a 'substantial connection' between" itself and Maryland, then such "in-state activity creates 'certain minimum contacts [with Maryland] such that maintenance of the suit [here] does not offend "traditional notions of fair play and substantial justice." ' " *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 136 (4th Cir. 1996) (citations omitted). American Information Corporation argues for specific personal jurisdiction based on both the "sliding scale" of Internet-based jurisdiction outlined in the leading case of *Zippo Manufacturing v. Zippo Dot Com*, 952 F.Supp. 1119 (W.D.Pa.1997), and the effects test of *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

▮▮▮ American Information Corporation argues that American Infometrics's Web site presence alone creates specific jurisdiction.[4] An entirely passive Web site cannot create jurisdiction in Maryland simply because it is theoretically available to Web users in Maryland and everywhere else.[5] *Atlantech Distribution*, 30 F.Supp.2d 534; *see also Virtuality L.L.C. v. Bata Ltd.*, 138 F.Supp.2d 677, 683–84 (D.Md. 2001) (dismissing, for lack of minimum contacts, a trademark case based on use of the allegedly confusing marks on a passive Web site). Even a passive Web site that uses someone else's trademark as an address does not necessarily generate jurisdiction. *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir.1998) (stating that "simply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another"). However, American Infometrics's Web site is not entirely passive; it does permit non-customers to inquire about available services and to apply for jobs.[6]

4. American Infometrics does not have Maryland customers or any other discernible contact with Maryland other than the availability of its Web site to Maryland users. This lack distinguishes findings of jurisdiction based on a deliberate decision by a defendant to do business over the Web or elsewhere with a resident or residents of the forum state. *See, e.g., Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (noting that where a defendant has "deliberately ... created continuing obligations between himself and residents of the forum," jurisdiction is fair (citations omitted)); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264 (6th Cir.1996) (business contacts off the Web and related to Web usage); *Design88 Ltd. v. Power Uptik Productions, L.L.C.*, 133 F.Supp.2d 873, 876–78 (W.D.Va. 2001) ("membership-based website on day trading"); *Tech Heads, Inc. v. Desktop Serv. Ctr.*, 105 F.Supp.2d 1142, 1144–45, 1148 (D.Or.

2000) (binding job agreements entered over Web and inquiry from resident of forum state); *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F.Supp.2d 824, 833 (N.D.Ill. 2000) (sale of products over the Web to residents of the forum state); *Zippo*, 952 F.Supp. at 1127 (contracts with thousands of individual residents of and seven corporations located in the forum state).

5. In light of this clear holding in the District of Maryland and the weight of circuit case law in support of it, cited *infra*, the contrary holdings of older cases from other federal district courts that plaintiff cites are not persuasive.

6. Because no Maryland residents are customers of American Infometrics, the site's interactive features that are available to customers are not relevant to the minimum-contacts inquiry.

■ However, several circuits have ruled that the maintenance of a Web site comparable to that of American Infometrics, without more, does not subject a company to jurisdiction. *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347–50 (D.C.Cir.2000) (reviewing circuit cases); *Mink v. AAAA Dev. L.L.C.*, 190 F.3d 333, 336–37 (5th Cir.1999) (finding a Web site from which a user could obtain a printable order form and corporate contact information did not create jurisdiction); *Cybersell Inc. v. Cybersell Inc.*, 130 F.3d 414, 419 (9th Cir.1997) (finding no jurisdiction where a Web site's interactivity is limited to "receiving . . . an indication of interest"). In the case at bar, non-customers cannot interact with the Web site except to submit their contact information to inquire about available services or jobs, according to Goreff, and no one from Maryland has ever inquired,[7] or been a customer of American Infometrics. On a company's Web site, neither the "mere existence of an e-mail link, without more," nor "receiving . . . an indication of interest," without more, subjects the company to jurisdiction.[8] *Mink*, 190 F.3d at 337 n. 1 (e-mail link); *Cybersell*, 130 F.3d at 419 (indication of interest). The ability of viewers to ask about the company's services, particularly in the absence of any showing that anyone in Maryland has ever done so, does not subject the company to jurisdiction here.

■ Fourth Circuit cases on minimum contacts support the view that the Web site of American Infometrics does not create jurisdiction in Maryland. A company's sales activities focusing "generally on customers located throughout the United States and Canada without focusing on and targeting" the forum state do not yield personal jurisdiction. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir.1997); *see also Stover*, 84 F.3d 132 (ruling that a telephone hire of a Maryland company does not subject the hirer to jurisdiction in Maryland). Nor should a Web presence that permits no more than basic inquiries from Maryland customers, that has never yielded an actual inquiry from a Maryland customer, and that does not target Maryland in any way. As there is to date "no District Court of Cyberspace," *Design88*, 133 F.Supp.2d 873, 877–78, a contrary ruling would subject defendant to jurisdiction in every state in the country. *See Atlantech Distribution*, 30 F.Supp.2d at 537.

■ Where the plaintiff's showing of minimum contacts is low, as here, courts "may evaluate the burden on the defendant", "the forum state's interest in adjudicating the dispute", "the plaintiff's interest in obtaining convenient and effective relief", "the interstate judicial system's interest in obtaining the most efficient resolution of controversies", and the "shared

---

**7.** Given that the company accepts inquiries from a Web site form that could be submitted with only an e-mail address to identify the customer, Goreff's certainty that no one from Maryland has ever inquired about the company's services is curious. His affidavit is at least substantially accurate, however, as for any serious inquiry, potential customers would apparently have to give their location, so that the company could check on whether its services were available in their area.

**8.** The presence of minimal advertising on the site in the form of banners for the Microsoft

products used to run the site does not alter this analysis. Where a company's business involves luring large numbers of viewers in order to profit from higher advertising fees based on larger Web traffic, advertising might substitute for doing other business over the Web. *GTE New Media Servs. Inc. v. Ameritech Corp.*, 21 F.Supp.2d 27, 38 (D.D.C.1998) (finding jurisdiction over companies that ran yellow-pages listings on their Web sites and hosted related hotel-reservation transactions), *remanded for further relevant discovery, GTE v. BellSouth*, 199 F.3d 1343.

interest of the several States in furthering fundamental substantive social policies." *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 529 (4th Cir. 1987) (citations omitted); *see also Burger King*, 471 U.S. at 476–77, 105 S.Ct. 2174. These factors may "establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." 831 F.2d at 529. In the case at bar, the burden on the defendant at least balances the plaintiff's interest in convenience, and the availability of jurisdiction anywhere in the country, over anyone with a Web site that accepts a rudimentary form inquiry, hardly promotes the most efficient resolution of controversies. These other constitutional factors do not prop up the plaintiff's weak showing of minimum contacts.

### III.

■ Separately, American Information Corporation argues that American Infometrics causes harm in Maryland, confusion as to the mark AINET, and that Maryland courts accordingly have jurisdiction over defendant. Arguably, if American Information Corporation's Maryland customers think of "AINET" as related to the plaintiff, and are confused when the Web address "ainet.com" does not lead them to plaintiff, harm arising from American Infometrics's use of "AINET" and "ainet.com" occurs in Maryland. *See Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. P'ship*, 34 F.3d 410, 411–12 (7th Cir.1994) (Posner, J.). American Information Corporation states that it has customers in Maryland, as well as throughout the United States and the world.

However, nothing on the record suggests that Maryland is a particular focal point for the harm American Information Corporation says it suffers from the challenged conduct. *Cf. Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir.2001) (noting that in *Calder*, "the [allegedly defamatory] story had its greatest impact in the forum state, where the plaintiff and subject of the story lived"); *Colts*, 34 F.3d at 412 (noting that "the bulk of the Indianapolis Colts' most loyal fans are, no doubt, Hoosiers, so that the largest concentration of consumers likely to be confused . . . is in Indiana").[9] Even if the record showed that plaintiff's harm occurred mainly in Maryland, jurisdiction would be problematic. If mere use of a protected mark on a Web site can create jurisdiction, where the Web site itself would not otherwise constitute minimum contacts, "every complaint arising out of alleged trademark infringement on the Internet would automatically result in personal jurisdiction wherever the plaintiff's principal place of business is located." 130 F.3d at 420. Such a rule significantly expands upon "traditional notions of what qualifies as purposeful activity invoking the benefits and protections of the forum state." *Id.* (distinguishing *Calder* from corporate trademark-infringement cases).

■ American Information Corporation has made no showing that American Infometrics deliberately targeted its mark, business, or customers. Cases finding personal jurisdiction based on harm involve some form of deliberate targeting of the plaintiff by the defendant, whether through defamation, *see, e.g., Calder*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (finding specific personal jurisdiction

---

9. Certainly there would be no confusion in Baltimore, where "the Colts" connotes honor, loyalty, and courage, while "the Indianapolis Colts" evokes memories of a different sort. But the fury of Colts fans has abated with the rebirth of the Colts' spirit. Were it not for the infamy of the midnight move, the mighty Ravens would never have reigned.

where alleged defamation was directed at a resident of the forum state); *First Amer. First Inc. v. Nat'l Ass'n of Bank Women,* 802 F.2d 1511, 1516–17 (4th Cir.1986) (same), or confusion of intellectual property suggesting deliberate poaching.[10] *Colts,* 34 F.3d at 412 (noting that the fame of the prior mark must have motivated the choice of the newer mark); *Toeppen,* 141 F.3d at 1321 (affirming findings of purposeful availment by and specific jurisdiction over an Internet squatter who registered famous domain names linked to companies in the forum state); *Crate & Barrel,* 96 F.Supp.2d at 836 (basing jurisdiction on the defendant's "knowledge" and "delibera[tion]" in infringing a well-known trademark). *See also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F.3d 1082, 1086–88 (9th Cir.2000) (requiring a showing of "express aiming" or "individualized targeting" in addition to a foreseeable effect in the forum state under the *Calder* effects test). In contrast, the Ninth Circuit confronted a case differing from the case at bar only in that registration of the service mark in question was not yet complete, and found that the defendant's "web page simply was not aimed intentionally at [the forum state] knowing that harm was likely to be caused there to" the plaintiff. *Cybersell,* 130 F.3d at 420; *see also Remick,* 238 F.3d at 259.

Finally, as Judge Posner noted, "in *Calder* as in all the other cases that have come to our attention in which jurisdiction over a suit involving intellectual property (when broadly defined to include reputation, so that it includes *Calder* itself) was upheld, the defendant had done more than brought about an injury to an interest located in a particular state. The defen-

dant had also 'entered' the state in some fashion." 34 F.3d at 412. *But see Toeppen,* 141 F.3d at 1323 (finding targeting in lieu of entry, in acts "aimed at" the forum state). Such entry has included television broadcasts in Indiana of the games of the new "Baltimore CFL Colts," in *Colts,* and the distribution of alleged defamation in the *National Enquirer,* in *Calder.* The only form of entry alleged here is maintenance of a Web site. In a sense, given the nature of the World Wide Web, any Web site "enters" every state and country in which someone has access to the Web. But such a theory subjects everyone with a Web site to jurisdiction in any state for any alleged violation of intellectual-property rights on the Web. The Constitution's guarantee of due process requires a higher threshold.

In sum, American Information Corporation has failed to meet its burden. On the question of Web-based jurisdiction in general, maintenance of a Web site that permits basic inquiries through a form and accepts job applications does not establish minimum contacts sufficient for personal jurisdiction, in the absence of any evidence that any resident of the forum state has ever contracted with or even contacted the company. Under *Calder v. Jones,* the use of someone else's registered service mark as a Web site address, without any evidence of entry into the forum state, deliberate targeting of the plaintiff, or even a concentration of harmful effects in the forum state, does not constitute "effects" sufficient to create jurisdiction in the forum state. American Information Corporation has registered its service mark, and the federal courts of California are avail-

---

**10.** I recognize that several cited cases involve famous marks (Crate & Barrel, the Masters, Panasonic). On this point, it was American Information Corporation's burden to show that the fame of its mark "AINET" was so great that deliberate targeting could be in-

ferred. *Cf. Tech Heads, Inc. v. Desktop Serv. Ctr.,* 105 F.Supp.2d 1142, 1148 (D.Or.2000) (noting that defendant's search process revealed no evidence of the plaintiff's mark, and thus that no deliberate targeting of the mark could be inferred).

able to vindicate its federal rights to that mark. Without a more solid showing of links to Maryland, a California company cannot be haled into court here simply because it established a Web site that uses a protected mark and that accepts inquiries from would-be customers. The motion will be granted.

## *ORDER*

In accordance with the attached Memorandum, it is this 12th day of April 2001, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendant's Motion to Dismiss BE, and the same IS, hereby GRANTED; and

2. That this case be CLOSED upon the records of the Court.